UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

TERRY D. TILMON                          CIVIL ACTION NO. 17-cv-0359

VERSUS                                    JUDGE HICKS

WARDEN, WINN CORRECTIONAL        MAGISTRATE JUDGE HORNSBY
CENTER

**REPORT AND RECOMMENDATION**

**Introduction**

Terry Tilmon ("Petitioner") has been in and out of prison over the years, and he has filed about a dozen pro se lawsuits with this court. He was arrested in 1999 after he broke into a car parked at the Duck Pond park in Shreveport and stole a purse. A Caddo Parish jury convicted Petitioner of simple burglary. He was adjudicated a third-felony offender and sentenced to 24 years imprisonment. The conviction and sentence were affirmed on appeal. State v. Tilmon, 870 So.2d 607 (La. App. 2d Cir. 2004), writ denied, 888 So.2d 866 (La.).

Tilmon later filed a habeas corpus petition with this court that included both exhausted and unexhausted claims. The court advised Petitioner of his procedural options with respect to his mixed petition, and he elected to dismiss without prejudice the unexhausted claims and go forward with the exhausted claims. This court then denied the exhausted claims on the merits, and the Fifth Circuit denied a COA. Tilmon v. Warden, 05 CV 2170; Tilmon v. Warden, 2009 WL 720886 (W.D. La. 2009).

Now, eight years after this court entered judgment, Tilmon has filed in his original 2005 habeas proceeding a Motion for Leave to Amend Original Petition that asks to present the formerly unexhausted claims that Petitioner voluntarily dismissed without prejudice in the original proceeding. Petitioner represents that he has since exhausted the former claims in the state courts. The proposed amendment raises claims based on how the state court handled his post-conviction proceedings. Petitioner argues that his proposed amended petition is not second or successive.

Judge Hicks ordered that the motion to amend be filed as a new civil action, which resulted in this civil action. The motion to amend was referred to the undersigned for review. For the reasons that follow, it is recommended that the proposed amended petition be dismissed for lack of jurisdiction; it is a second or successive petition for which leave was not granted by the Fifth Circuit prior to its filing.

**Background Facts**

Sherelle Netter, a Shreveport Police Department 911 operator, parked her car in the parking lot of a Shreveport park commonly known as the Duck Pond. A silver or gray car was parked on the passenger side of Netter's car. Ms. Netter saw a maroon Lincoln enter the parking lot and park on the driver's side of her car. She saw the right side of the driver's face from a few feet away. He was a black man with a medium complexion. She did not see anyone else in the Lincoln. The Lincoln soon left its parking spot and moved next to the silver car.

Ms. Netter saw the single occupant of the Lincoln got out of the car with a fishing pole, walk down to the pond, then return to the parking lot without the pole. The man walked between the Lincoln and the silver car, and he bent down and began "messing" with the door handle of the passenger side of the silver car. Ms. Netter called 911 and began to describe what was happening.

Ms. Netter saw the man get a tire tool from the Lincoln and break the passenger window of the silver car. She then drove from the parking lot and parked across the street. She saw the man get inside the silver car, open its trunk, and take a light-colored object from the trunk. Ms. Netter described the man to the 911 operator.

Sgt. J. D. Reich of the Shreveport Police Department testified that he responded to a report that a person in a red Lincoln was committing a vehicle break-in at the Duck Pond. Reich approached the park and saw the Lincoln beginning to leave the parking lot, so he drove into the driveway, opened the door of his patrol car, and attempted to get the driver to stop. The driver did not stop, and Reich had to move to keep from getting hit by the car. Reich saw only one person, the driver, in the Lincoln, which left with another patrol unit pursuing it.

Detective Lane Smith testified that he was reporting to the Duck Pond when he saw a maroon Lincoln leave the park and drive toward him at a high rate of speed. Smith turned around and pursued the Lincoln through Shreveport at speeds of up to 120 miles per hour. The Lincoln stopped in the Jackson Heights Projects, and the driver ran on foot with a purse. Smith chased the man through the neighborhood, never losing sight of him, and saw the man

throw the purse onto a porch area surrounded by a six-foot wrought-iron fence. Smith eventually ran down and arrested the driver of the Lincoln, who was Petitioner. Smith also recovered the purse from where it had been thrown. Smith identified Petitioner in the courtroom as the man he arrested.

When the chase started, Ms. Netter went back to the park and located Kathleen Fetsch, the owner of the stolen purse. Ms. Fetsch testified that she and her husband took their grandchildren to play at the park. They locked the doors on their 1998 gray Honda Accord and went to feed the ducks. She denied that Petitioner had permission to enter her car or take her purse from the trunk. Ms. Netter and Ms. Fetsch went to the police station, where Ms. Fetsch identified her purse, which contained her wallet with identification. Ms. Netter identified Petitioner in the courtroom and said that she was positive he was the person she saw at the Duck Pond.

Attorney Sam Love, Jr. testified that he was contacted by Petitioner's brother a few days before the trial. The brother asked Love if he would notarize an affidavit by a man who claimed to have committed the crime of which Petitioner was accused, and present the affidavit to the authorities. Love agreed to do so for $400. A man who said he was Ronald J. White (but his identification was not checked) signed an affidavit that claimed he committed the crime while Petitioner was asleep in the Lincoln, put the purse under the seat, and asked Petitioner to pick him up at the restroom area, where White went to wash blood from his hand. White said he later returned to the parking area but did not see the car or Petitioner. The defense wanted to call Ronald White, who had been present in court the day

earlier, sworn by the court, and instructed to return when called. Mr. White did not return, and deputies could not find him.

A six-person jury returned a unanimous verdict of guilty of simple burglary. The sentence was subject to enhancement based on Petitioner being a third-felony offender. The trial court deviated downward from a mandatory life sentence and imposed only a 24-year sentence, which the State did not appeal. The facts related to the trial are set forth in more detail in the prior Report and Recommendation in 05 CV 2170.

**Procedural History**

Petitioner filed his first federal habeas petition in 2005. The petition set forth five principal claims: (1) counsel was ineffective for not adequately preparing, not interviewing certain witnesses, and not testing the State's case; (2) the identification procedure was unconstitutional; (3) counsel was ineffective for abandoning an intoxication defense; (4) counsel was ineffective during the habitual offender proceedings; and (5) counsel was ineffective because he failed to object to jury instructions.

An application for a writ of habeas corpus "shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The requirement gives the state courts a first opportunity to correct alleged violations of federal rights. Baldwin v. Reese, 124 S.Ct. 1347, 1349 (2004). To satisfy it, a prisoner must fairly present his federal claim in each appropriate state court, either on direct appeal or through a post-conviction application. Sones v. Hargett, 61 F.3d 410, 415 (5th Cir. 1995).

Petitioner knew that his petition included unexhausted claims, evidenced by his immediate filing of a motion to stay the petition while he completed the state court proceedings with respect to some of his claims. The court denied the request for stay. Petitioner then asked to amend his petition by "temporarily deleting" the unexhausted claims. That request was also denied.

A proper response to a mixed petition is to dismiss the entire petition without prejudice. Rose v. Lundy, 102 S.Ct. 1198 (1982). But the one-year period of limitation for bringing a habeas action, combined with the fact that a federal petition does not toll the limitations period, often means that such a dismissal will leave the petitioner forever precluded from timely seeking federal habeas relief. Some petitioners therefore elect to amend their petition or otherwise dismiss the unexhausted claims without prejudice, and they proceed in federal court on just the exhausted claims. But "a prisoner who decides to proceed only with his exhausted claims and deliberately sets aside his unexhausted claims risks dismissal of subsequent federal petitions" under the strong federal preference for a single habeas petition rather than piecemeal litigation. Lundy, 102 S.Ct. at 1205.

The court issued an order that noted Petitioner had filed a mixed petition. The court explained the relevant law, as discussed above, and gave Petitioner options on how to proceed. He could (1) maintain the petition as it was, with full knowledge that the court would likely dismiss the entire petition; (2) voluntarily dismiss the unexhausted claims with knowledge that he would risk the opportunity to present those claims later in a successive petition; or (3) voluntarily dismiss the entire petition without prejudice so that he could

exhaust all claims before refiling, but with knowledge that such an effort could be barred by the limitations period.

Petitioner responded with a motion to amend that asked the court to "dismiss the unexhausted claims without prejudice and or amend his petition by deleting any and all claims in reference to claims 3, 4, and 5." The court granted that request and dismissed those unexhausted claims.

The undersigned issued a Report and Recommendation that explored the merits of claims 1 and 2: the broad ineffective assistance claims, and the challenge to the lineup/identification claim. It was recommended that the claims be denied on the merits. Judge Hicks adopted that recommendation and entered judgment. The Fifth Circuit denied a COA in October 2009.

There was no further action in federal court until Petitioner filed his motion to amend in 2017. Petitioner reports that he has, in the interim eight years, been litigating his unexhausted claims in state court. Petitioner seeks to amend his 2005 habeas petition "limited to" counsel's failure to pursue the intoxication defense and failure to interview and call witnesses related to that defense. He also seeks to assert related claims that the state courts denied him due process during the post-conviction proceedings. And his memorandum includes an argument about ineffective assistance by appellate counsel.

**Analysis of Current Filing**

The AEDPA of 1996 established procedures that a prisoner must follow if he wishes to file a "second or successive habeas corpus petition." 28 U.S.C. § 2244(b). Before filing

the application in the district court, the prisoner shall move in the court of appeals for an order authorizing the district court to consider the application. Section 2244(b)(3)(A). The court of appeals may authorize the filing of the second or successive application only if it presents a claim not previously raised that satisfies one of the limited statutory grounds (claim is based on a new and retroactive rule of constitutional law; factual predicate could not have been discovered previously through due diligence; or facts underlying the claim would establish by clear and convincing evidence that the petitioner would have been found not guilty). Section 2244(b)(2).

  The plurality opinion in <u>Rose v. Lundy</u> stated that district courts should dismiss mixed petitions, and petitioners with such petitions have two options. The first is to withdraw the mixed petition entirely, exhaust the remaining claims, and return to district court with a fully exhausted petition. In those circumstances, the later filed petition would not be second or successive. <u>Slack v. McDaniel</u>, 120 S.Ct. 1595 (2000).

  Alternatively, a prisoner who files a mixed petition may elect to dismiss his unexhausted claims and proceed in federal court with only the exhausted claims. <u>Rose v. Lundy</u> recognized this choice but warned that a prisoner who invokes the procedure would risk forfeiting consideration of his unexhausted claims in federal court under what was then called the abuse of the writ doctrine. <u>Lundy</u>, 102 S.Ct. at 1204-05. The jurisprudential doctrine has since been legislatively supplanted by the "second or successive" provisions in Section 2244.

More than decade after Rose v. Lundy was decided, Congress enacted a one-year statute of limitations for bringing federal habeas petitions. 28 U.S.C. § 2244(d). The period is subject to tolling while a properly filed post-conviction application is pending in state court, § 2244(d)(2), but a federal petition does not toll the limitations period. Duncan v. Walker, 121 S.Ct. 2120 (2001). The effect is that a prisoner who comes to federal court with a mixed petition (which does not toll) runs the risk that, by the time it is determined the petition is mixed, it would be too late to dismiss that federal petition, return to state court to exhaust all claims, and later bring a proper and timely federal petition.

The Supreme Court has held that district courts are not obligated to give pro se petitioners warnings about the procedural effect of their choices with regard to such matters. Pliler v. Ford, 124 S.Ct. 2441 (2004). This court nonetheless advised Petitioner that he had filed a mixed petition and had three options. One of them was to "indicate to the court that he wishes to dismiss the unexhausted claims with full knowledge that he will risk the opportunity to present these claims in a successive petition." The court further explained:

> Petitioner is put on notice that dismissing the unexhausted claims is not without consequence. If he should dismiss the unexhausted claims at this time, he may be precluded from bringing the claims in the future. Specifically, the law with respect to successive petitions requires a petitioner to obtain authorization from the appropriate court of appeals before filing a second or successive petition. 28 U.S.C. § 2244(b)(3)(A).

With those warnings given, Petitioner elected to dismiss his unexhausted claims without prejudice and proceed in federal court with his exhausted claims.

After the AEDPA was enacted, courts continued to draw the distinction between withdrawing a petition without prejudice (which allowed a return to federal court after exhaustion) and merely dismissing the unexhausted claims (which ran the risk that a return/second petition would be barred). For example, the prisoner in Tapia v. LeMaster, 172 F.3d 1193 (10th Cir. 1999) was alerted that he had filed a mixed petition, and he asked that he be allowed to go forward with only his exhausted claims. The court did so and dismissed without prejudice the unexhausted claims. When Tapia returned with a second federal habeas petition after exhausting the dismissed claims, the court of appeals held that it was a second or successive application that required authorization before it could be filed in the district court.

The Supreme Court also acknowledged the distinction in Burton v. Stewart, 127 S.Ct. 793 (2007), where the petitioner filed a federal petition that presented exhausted challenges to his convictions while he continued to litigate in state court unexhausted challenges to his sentence. He attempted to file a second federal petition after he completed exhaustion of the sentencing claims. The Supreme Court held that the new petition was second or successive so that the district court had no jurisdiction to consider it. The Court noted the two choices that face prisoners who possess both exhausted and unexhausted claims, the second choice being to proceed with the exhausted claims only without awaiting exhaustion of the other claims. The Court stated: "There is no basis in our cases for supposing ... that a petitioner with unexhausted claims who chooses the second of these options—who elects to proceed to adjudication of his exhausted claims—may later assert that a subsequent petition is not

'second or successive' precisely because his new claims were unexhausted at the time he filed his first petition." Burton, 127 S.Ct. at 797.

Petitioner's attempt to avoid the single petition policy of Rose v. Lundy and the AEDPA runs afoul of these rules. He argues that his proposed amended petition is not second or successive, citing In re: Gasery, 116 F.3d 1051 (5th Cir. 1997), but that case is inapplicable. It held that a prisoner could dismiss his entire mixed petition (not just some claims) without prejudice, and, after exhausting his state court remedies, file a new federal petition that would not be second or successive. The Supreme Court later held the same in Slack v. McDaniel, 120 S.Ct. 1595 (2000).

Burton explained that Slack is unhelpful to a petitioner in this situation, where the first petition was not dismissed but was actually adjudicated on the merits. Burton, 127 S.Ct. at 798. The Fifth Circuit also spoke to this in Crone v. Cockrell, 324 F.3d 833 (5th Cir. 2003), where the first federal petition asserted claims based on ineffective assistance and sentence enhancement. That petition was dismissed as untimely. The prisoner filed a second habeas petition that attacked the calculation of jail time credit for time when he was erroneously released. The Fifth Circuit held that the second petition was successive because the prisoner knew the facts relevant to the jail time credit claim when he filed his first petition. Important here, the Court did not care that the credit claim had not yet been exhausted at the time the first petition was filed. "In accordance with our strong policy against piecemealing claims, we have long held that under an abuse of the writ standard, the sole fact that the new claims were unexhausted when the earlier federal writ was prosecuted will not excuse their

omission." Crone, 324 F.3d at 837 (internal quotes omitted), citing McGary v. Scott, 27 F.3d 181, 184 (5th Cir.1994). The decision of the district court, which had decided the second petition on the merits, was vacated for lack of jurisdiction.

The Fifth Circuit, in Strickland v. Thaler, 701 F.3d 171 (5th Cir. 2012), did allow a habeas petitioner to file a second petition in similar circumstances, but the unique facts of that case are distinguishable. The district judge that reviewed the mixed petition adopted a magistrate judge's recommendation that the exhausted claims be denied on the merits and unexhausted claims be dismissed without prejudice. The district judge added that the dismissal without prejudice allowed the prisoner "to again seek federal habeas corpus relief upon those claims, when he can show that the exhaustion requirement has been met ... ." The Fifth Circuit examined whether the new petition was second or successive when the dismissal of the claims had stated that the petitioner could return to federal court after exhaustion. The Court held that it would be inappropriate to send petitioners on wild goose chases by authorizing them to split their claims and "guaranteeing them federal habeas review if they exhaust their state court remedies," only to deny them habeas review after they exhausted.

This case is different. This court did not guarantee or so much as hint that Petitioner could return to federal court after he exhausted his dismissed claims. Rather, this court warned in very specific language that any attempt to return with those claims would be met with the obstacle of the second or successive statutory provision.

Petitioner also attempts to avoid the second or successive provision by presenting his newly exhausted claims in a motion to amend rather than a new petition. The Supreme Court

explained in Gonzalez v. Crosby, 125 S.Ct. 2641 (2005) that filings other than a petition may contain one or more habeas claims and be subject to the second or successive application provision. A Rule 60(b) motion, for example, is subject to the provision if it seeks to assert a new claim or makes new arguments in support of a claim that has been denied. The Court agreed with the view "that such a pleading, although labeled a Rule 60(b) motion, is in substance a successive habeas petition and should be treated accordingly." Gonzalez, 125 S.Ct. at 2647.

Similarly, a motion to amend may not be used as a vehicle to circumvent the limitations on the presentation of claims in a second or successive application. Moreland v. Robinson, 813 F.3d 315, 322-23 (6th Cir. 2016); Gonzalez, 125 S.Ct. at 2648 ("A motion that seeks to add a new ground for relief ... will of course qualify."). When a habeas petitioner makes a filing that attempts to assert new habeas claims after the merits of a prior habeas petition have been resolved, the filing is a second or successive habeas application. That result cannot be avoided by creative labeling of the filing.

**Conclusion**

"After a state prisoner has had a trial, a direct appeal, and an opportunity for collateral review in the state courts, he typically gets one, and only one, chance to collaterally attack his conviction in federal court." Patterson v. Secretary, __ F.3d __, 2017 WL 836035, *3 (11th Cir. 2017). Petitioner has his one and only chance when he chose to litigate the merits of his exhausted claims in the 2005 petition. His motion to amend is, despite its title and the arguments therein, a second or successive application for habeas relief that is subject to the

requirements of 28 U.S.C. § 2244. When that is the case and the petitioner has not received authorization from the Fifth Circuit, the district court is without jurisdiction to consider the petition. Burton, 127 S.Ct. at 796.

District courts sometimes transfer second or successive filings to the Fifth Circuit to be treated as an application for authorization to proceed in the district court. Such a transfer is not warranted in this case because Petitioner has not presented any argument that he meets one of the authorization standards, and there is no indication that he would be able to make such a showing if directed to do so. Under these circumstances, dismissal without prejudice would be more efficient and better serve the interest of justice. See Hawkins v. Stephens, 2015 WL 3770496, *4 (S.D. Tex. 2015). This does not prohibit Petitioner from going on his own to the court of appeals and filing a request for the appropriate authorization.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's application for habeas corpus relief, styled as a Motion to Amend Original Petition, be dismissed for lack of jurisdiction on the grounds that it is a second or successive application under 28 U.S.C. § 2244.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel

are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a COA when it enters a final order adverse to the applicant. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 120 S.Ct. 1595, 1604 (2000). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a COA should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 13th day of March, 2017.

_____
Mark L. Hornsby
U.S. Magistrate Judge